Thank you your honor, may it please the court, the majority below committed two legal errors. First, it ruled that records of Mr. Moore's hospitalization for the very same disability for which he seeks compensation, indeed the very same disability for which he was discharged from the Navy, are irrelevant as a matter of law to his disability rating. The government agrees with you on that, right? The government agrees that if it ruled as a matter of law, that ruling was incorrect. The government argues that the actual, if I understand the government's argument correctly. Well I think what the government is saying is that the Pro Pilsner Veterans Claims found that you hadn't established prejudice and that accordingly, and they want the burden to be on you. Of course that's involved in the Sanders and Simmons cases in the Supreme Court. Absolutely your honor. But I'm not clear what more you could have done to show prejudice because you haven't got the records, so you don't know what's in the records. So how are you supposed to show prejudice? That's exactly right your honor and I think what the court did here is very similar to what the court did in McGee. Notwithstanding the absence of the underlying records, the court made findings, the majority below made findings that deal with the subject matter of those records. Both the VA and the Board of Veterans Appeals dismissed his hospitalization, Mr. Moore's hospitalization, as a single episode now resolved without actually looking at the records of his hospitalization. So prejudice really flows from the fact that this issue was relevant, it was addressed by both the VA and the BVA, but it was addressed without the key critical records, inpatient records of his treatment at Tripler Medical Center. What about A1920, the records that, these are the records immediately following his hospitalization? From that time frame. And there's no motivation by anyone to make anything up, so I think that they've got the actual information from medical records at the time. Respectfully no, your honor. What Mr. Moore has asked be obtained and what the VA should have obtained are the inpatient records of his treatment from when he was admitted on discharge on January 3rd. And what we have in these five pages in the joint appendix that your honor referenced are outpatient, well a discharge note, and then subsequent outpatient records. Wasn't one from January 2, January 3? So my point is that it's right there and then it records the history and physical and other information. So you're dismissing six days of records immediately preceding it. It's not like they got him in 92 and never went back and got any records from that time frame. You're right, your honor. But the record of, the one record of January 3rd that your honor points out is the record of the day he was discharged. Naturally he's in a better condition the day he's discharged than the day he was admitted. And that record doesn't describe his symptoms during when he was admitted. It says that he went berserk and that he was admitted as a result of that. It talks about some of the reasons why he felt that he was in the state he was. But what we don't have are the daily records of his treatment during that hospitalization when he's being evaluated by doctors, being evaluated by nurses, and his symptoms are being recorded. And those are the, as Judge Casald recognized in her dissent, it's those inpatient records that are likely far more descriptive than the handful of documents that we do have in the record. And I think more fundamentally, the statute does not excuse the failure to create a complete record. The statute requires the Veterans Administration to obtain all relevant service medical records and doesn't excuse a failure to obtain some because others were obtained. And so I would submit that the fact that we do have five pages does not in any way absolve the VA of the failure to obtain the records of his inpatient treatment when he was hospitalized. What about the fact that you didn't raise this argument until the Court of Appeals for Veterans Claims? That's correct, Your Honor. As often happens in these cases, the veteran proceeds on his own through the Board of Veterans' Appeals. The Board of Veterans' Appeals is a non-adversarial forum. Mr. Moore was represented by a non-attorney representative of disabled American veterans at that point. And it's not until he gets to the Veterans Court where he obtains representation of counsel and he's in a position to make these legal arguments that there was a violation of the duty to assist. And as the Veterans Court did in this case and as it has done in other cases, it does hear challenges to a violation of the duty to assist for the veteran. If I could just address briefly, do Your Honors have any other questions? If not, I'll take the rest of my time and rebuttal. May it please the Court, there's simply no error here and that's what the Veterans Court held. Error? Excuse me? No error? I mean, I thought the Veterans Court said that the records were not pertinent and I thought you agreed they were pertinent. That sounds like an error. The Veterans Court held that the records were not relevant and the statute says that VA must obtain all relevant. That's an error. Excuse me? It's an error. No, the Veterans Court found that they were not relevant. Yeah. If the records are not relevant, then there's no error. I thought you agreed they were relevant. No, I don't think we've ever agreed that, to that. I'm confused. In our... But that was the whole point of your requesting the remand. We initially requested a remand. The Court denied that request and explained that the records were not relevant, which we did. And we've never abandoned the position that the Veterans Court may have articulated a categorical per se rule against consideration of pre-claim records. But upon very close consideration of the decision, it's a very fact-specific decision, fact-specific to the facts of this case. That sounds like an argument that the error wasn't prejudicial. No, because really what the Veterans Court was saying was not that pre-claim medical records are never relevant, but that in this situation where the medical records are actually in-service medical records, not just pre-claim medical records, but in-service medical records that have already been considered for purposes of service connection. You get some of them, you don't have to get the rest of them? Is that what you're saying? No, and this is actually something that was not directly addressed by the Veterans Court, but I'd like to point out that the VA obviously obtained the service medical records from Tripler. And the reason we know that is page 20 of the appendix. Page 20 of the appendix is the discharge note from the hospital. It contains... Let's assume hypothetically that there were records, right, at Tripler that weren't obtained, okay? That's an error, right? Well, no, because I think what we need to assume is that the VA requested from Tripler and every other relevant hospital this Veterans records they had received... No, you're not going with my assumption. I'm asking you to hypothetically assume that there are hospital records that weren't obtained, okay? That would be an error, right? Not necessarily. And I think I am going with your hypothetical because I think the answer is that VA obviously requested records. Tripler gave the VA this record. There's nothing facially on this record that would indicate that there's anything else to be obtained. How do we know this came from Tripler? Because it says Tripler Army Medical Center on the top. How do we know that it came from... That they requested of the hospital and that's who gave this? Maybe it was in the file of the Veteran or in the Veterans Assistance Group? Well, we don't know... You're speculating about... You're making a big point about they did get the records because there's a page of them. Well, where's the rest of it? I'm making that point because in the 19... This is the discharge note. Presumably, if he was in the hospital for three or four days, they would have extensive treatment notes, diagnoses, prognoses, et cetera. Perhaps, but... But let's assume that there were such records, okay? Let's assume that there's a whole inch set of records from the hospital state. They didn't turn over. That would be an error, right? No, not necessarily. No, why not? Because if VA, I think for purposes of this hypothetical, and if it's okay, I'm going to assume that VA requested records from Tripler. This is just getting back to Judge Mayer's question. They didn't turn them over. Let's assume they didn't turn them over. Let's assume... Well, we know that they turned over one because we have a... But let's assume they didn't turn them over. Isn't that an error? If Tripler didn't produce anything, is that the assumption? They didn't produce the records I'm talking about in my hypothetical, the hospital records. They had hospital records. They didn't turn them over. It's an error, right? Well, if VA is aware that this veteran spent time at Tripler and Tripler didn't submit the records, well, I mean, I guess I have to amend my answer because in your hypothetical, does Tripler notify the VA that there are records and that they're not going to give them to VA? The VA is responsible for the hospital. There are records that existed. They're not turned over. That's a violation of the duty to assist, right? Well, I think it depends on the circumstances. What circumstances does it depend on? For example, here, assuming that VA requested service medical records, it received at least one from Tripler and I think it's reasonable...  Well, I think it's reasonable for VA to assume that it got everything that Tripler had. But suppose it didn't? Well, I mean, I think at some point, Mr. Moore, well, at all points throughout this proceeding, Mr. Moore had the opportunity to notify VA that there was something missing. But is that burden shifting? I mean, isn't the burden not on the veteran? That's correct. With respect to service medical records, the burden is not on the veteran. But the important point is that there is nothing in this obtained service medical record or assuming that there is anything else that exists, there is nothing in those service medical records that could possibly change the level of disability that Mr. Moore... How do we know? We don't know what's in the records, if there are records there. How do we know that they wouldn't change the disability rating? Because the VA has already made a factual finding of what Mr. Moore's level of disability was between 1992 and 1997, which is the time period at issue. There's nothing that could possibly be contained in his in-service medical records that could change what happened between 1992 and 1997. It sounds as though you're taking back the concession that you made, that it would be to look at the earlier records to determine what the disability was in the later period. No, I'm not. What I'm saying is that, and this is what the Veterans Court specifically held, that in this circumstance, where you already have the event that Mr. Moore is concerned about, which is his hospitalization in 1990, that event has already been acknowledged by VA. That is the basis of his service connection. When that event has already been acknowledged, there couldn't possibly be anything more that could change... There couldn't be anything inconsistent with what's already been found. If it's inconsistent, then that necessarily would mean that there would be something that might indicate that Mr. Moore, whatever he experienced, wasn't as severe as what he claims. There's absolutely nothing... That's directly inconsistent with the concession that you made, that the VA is obligated to consider the history. Directly inconsistent. The VA is obligated to consider the history with respect to disability compensation claims. There are several factors with respect to those considerations. Obviously, the first factor is service connection. VA considered all of these records going back to 1981 with respect to the question of Mr. Moore's service connection. The issue here is whether what happened in service could have any bearing on the state of his disability between 1992 and 1997. What if the earlier records document that he's got some mental problem that's beyond just a one-time problem with a girlfriend, and that that was in the medical records, and that the service relation continues on and it actually gets worse in 1992 and upwards? Wouldn't you want to go back and look to see what was in the earlier records? Well, perhaps. That's actually an interesting question because if there were some indication that Mr. Moore's disability had increased in the way that your honor poses from service continuously through this period between 1992 and 1997, that might be a different question. But what we have here is the VA already making the determination that Mr. Moore is entitled to 10% disability compensation between 1992 and 1997. And then VA going back upon Mr. Moore's request and determining that there is nothing in the 1992 and 1997 that demonstrated an increase in severity, which is the- Those are outward symptoms, but with the underlying condition of these things could very well be lying there dormant and be documented, as Judge Hoff says, in those active duty hospital records. In other words, you say it's an interesting question that she posed. It's the essential issue in this case. Well, dormant symptoms are not symptoms- Well, there's a number of things we can speculate about as you've been speculating here. You even speculated that Tripper sent this record. I think the logical thing to assume is that this was in the possession of the veteran. They gave him this piece of paper when he left. They didn't give him his hospital records. That happens with regularity. Well, the VA says in its 1998 board decision that it has requested its medical records, service medical records, and satisfied its duty to assist. I'm presuming that VA said that in good faith and obtained these medical records. I don't think there's any reason- You're assuming. Yes, but I think that's a reasonable assumption. There's nothing in the record to demonstrate that any of these medical records came from Mr. Moore. And he certainly doesn't say they did. Or Trippler. Well, I think they say that they come from Trippler. Of course they do. But there's no transmittal from Trippler. That coupled- You go to the hospital over here and you get a document that's stamped as this one is that came from Inova or whatever. That came from you. It didn't come from them. That coupled with VA's statement in the first board decision that it has sought medical records and complied with its duty to assist, I think right together leads to the reasonable- But we know from the cases that they have a very generous definition of their compliance with the duty to assist. And if they asked for them and never got them, they figured they've done all they need to do. Well, but in this- They were told they're arson. In this case, that's not what happened. I think it's reasonable to assume that they said that they asked for them. We have no reason to believe that that's not true. Okay, well, I know you've said it. I won't badger you about it. Go ahead with your next point. Obviously, the final question is whether assuming an error, there is prejudice. And the Veterans Court made the determination that- And it's really the same determination that it made with respect to the other part of the merits part of the case. That's the problem. That's the problem. Is that the prejudice, the no prejudice determination, they determined it's not prejudicial because the records weren't relevant. That's exactly the problem. Well, I don't see that as a problem. The statute, the VA's duty is to obtain relevant medical records. So I think there's two questions that- Or there's two failures that you have to assume for purposes of prejudice. First, the VA failed to obtain records. And second, that those records were relevant. And the Veterans Court assumed both of those issues for purposes of its prejudicial error analysis. And with respect to the burden shifting argument that Mr. Moore has made, the Veterans Court has essentially done that burden shifting analysis for the VA and made the determination that there's absolutely no way that even if such an error had occurred, it would have changed the outcome. For these reasons, we respectfully request that the court affirm the decision of the Veterans Court. Thank you, Your Honors. On the issue of prejudice, I agree with Your Honor. It is simply an extension of the holding of relevancy. And it is an extension of the legal error in the determination of relevancy. The court's analysis is that because records that predate a claim can't possibly shed light on the extent of disability after a claim, therefore, the absence of these records could not possibly have prejudiced Mr. Moore. So the Veterans Court essentially did not assume that they were relevant. It continued to assume that they were not relevant. But as the VA's own regulations recognize, and as Your Honors have pointed out, the ratings can persist unrecognized and can persist without being evident in a medical examination. And that is precisely why you have to look at the entire recorded history of a disability, so that you don't miss things that don't show up in a 1992 exam. Suppose in this case there hadn't been any record of hospitalization and had these obtained outpatient records, and there was a claim that there were more records because there was no showing that there was a reason to believe that there were additional records. I mean, wouldn't that be a different case? It would be a very different case, Your Honor. First, both the Veterans Court and I think the government earlier has assumed that these records exist. And that's only a natural assumption. Because when you're hospitalized, they usually make records. They usually make records. And, you know, I apologize for raising this at this point, but I only received these yesterday since I volunteered to take on this case. I've been trying to find these records myself. They were delivered to my office yesterday. I didn't think that they were that they should be put in the record because they weren't before the Veterans Court. The hospital records? Yes. But if Your Honors believe that... They gave you hospital records and the government's sitting here, standing here, arguing that there aren't any hospital records? Well, Your Honor, I only received these yesterday. And we've been trying to find them now for a long time. I think that as far as I can tell, they were, in fact, lost in the bowels of the National Personnel Records Center. I don't in any way, I don't have any reason to believe that the government has not acted in good faith and has not made efforts to find these records. But the fact is, they do exist. They do exist. They should have been obtained because they were in the government's possession. So the hypothetical that we've been talking about is not a hypothetical. There were records. They weren't obtained. And if Your Honors would like me to put those into the record, I'd be happy to. Again, I did only receive them yesterday after making requests for some time now. Was it clear that you didn't, that the records were not in the before produced because in A36, it talks about the second paragraph, the service medical records show that in December 1990, the veteran was reported to have some problems. And I think the service medical records that that paragraph is referring to are the few that are in the joint appendix. I've also obtained Mr. Moore's entire claims file from the VA in New York. And that claims file does not contain anything from this time period other than what's in, other than what was put in the record before the BVA and that is now in the record before this court. It was only after numerous letters to Tripler, to the National Personnel Records Center, that we finally, just yesterday, received a package. Did you advise the government of your request? I did not. I did not, Your Honor. Until now, this moment. And in retrospect, I should have done that immediately. I apologize for that. Are they cumulative? I do not believe they are cumulative. But I would certainly give them to opposing counsel and allow her to come to her own judgment about that. I don't believe that you can, the error that the Veterans Court committed was to determine that they were cumulative without having reviewed them. And I think that was legal error. You got these records through a FOIA request? Writing, first we wrote to Tripler and after back and forth with Tripler, they then told us that everything was sent to the National Personnel Records Center and we've gone back and forth with the National Personnel Records Center in St. Louis. Until yesterday when there was a package delivered to me that had these additional records. Okay. Your Honor, for the foregoing reasons, we request that the decision below be reversed and that the case be remanded with instructions to remand it to the BVA to obtain and consider these records. Thank you. Ms. Burke? Thank you, Your Honor. Obviously, we're unaware of the records that Mr. Moore has located. And we'd need to think about the most appropriate way to go forward. My first instinct is that this is obviously a question for the VA, not this court. And to the extent that this constitutes new and material evidence. I find it troubling that you were representing earlier that we should assume that there weren't any records. Whereas it now appears that there may be, in fact, such records. Well, Your Honor, I think what I was proposing is that we should assume that VA made a request and received something from Tripler. So the VA's not responsible for Tripler's not producing the records?  I mean, let's say this document on page- But the duty to assist only extends to part of the VA? No, Your Honor. But let's assume that on page A20 says page 1 of 5. So that VA is put on notice that there is something insufficient or deficient about this document. That's not the case. VA likely assumed that it got everything that Tripler had for whatever reasons. Now, I have no way of knowing- It's an Army hospital. It's not a VA hospital. It's not a VA hospital? No. I mean, and that makes sense because this is still in service for Mr. Moore. So he wouldn't have been at a VA hospital. I have no idea why. Well, first of all, I have no idea what these records say. I thought that Mr. Graham said that he hadn't had a chance to review them. And then I heard him say that they were not cumulative. So I don't know. I have no idea what the records say. I have no idea whether they are what Mr. Moore thinks they are. Obviously, I'd have to look at them. And then we'll try and figure out how to proceed. But again, my first instinct is that this is a question for VA and not for this court. I mean, it doesn't change. Again, I'd have to look at them. But I don't think it's possible, as the VA held, that it could possibly change the outcome of the case. It can't change the increase of severity of Mr. Moore's disability between 1992 and 1997. Thank you. Well, we call her back in a regular procedure. But you, as the opponent, have no final word on this unless you have no final word. Your Honor, I have nothing further. All right. We will consider what next steps should be in this unusual circumstance and perhaps issue a supplemental order. You'll be holding on the road. I suggest, Mr. Graham, that you share the documents with the government. Absolutely, Your Honor. Or with. And then we'll see what we think later about pursuing this road. Thank you. Thank you.